**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph Gonzalez ALVARADO, Jr., Rogelio Arenas, Ernesto J. Gonzalez, Rodolfo Gonzalez, Rogelio Gonzalez, Eliseo Guerra, Carlos Nieto, Magin Reyes, Emilio Salinas, Luis Gumaro Tamez, Pablo Villa, Guadalupe Garcia, Enrique Garcia and Juventino Salinas Munoz, Defendants-Appellants.**

No. 80–1340.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 8, 1981.
Rehearing Denied July 16, 1981.

L. Aron Pena, Edinburg, Tex., for defendants-appellants.

Eduardo R. Rodriguez, Brownsville, Tex., for Munoz.

Carl Walker, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, GEWIN * and POLITZ, Circuit Judges.

GEWIN,* Circuit Judge:

## I. Introduction

The fourteen herein named defendants-appellants seek relief from their convictions and sentences rendered in a non-jury trial by the district court for conspiracy to possess marijuana with intent to distribute. The following nine issues are raised on this appeal: (1) whether appellants were placed in double jeopardy; (2) whether the superseding indictment was the product of illegally obtained evidence; (3) whether the superseding indictment should have been dismissed by reason of delay; (4) whether denial of appellants' severance motion was proper; (5) whether transfer of venue was error; (6) whether James Beaupre, a Government agent-witness, was properly excused from the operation of Fed.R.Evid. 615; (7) whether the testimony of F. Benavidez should have been excluded; (8) whether identification testimony directly resulting from a photographic array was properly admitted into evidence; and (9) whether the evidence was sufficient to convict. After careful consideration of the record and relevant case law, we believe it unnecessary to address the first four issues in the body of this opinion.[1] Instead, discussion of the remaining five inquiries will adequately dispose of this appeal.

## II. Pertinent Factual and Procedural History

Beginning around June 1976 and continuing until February 1977, approximately thirty persons, including the fourteen appellants named herein, participated in a scheme to import marijuana from Mexico to Donna, Texas for disbursement to other parts of the United States. Bales of marijuana were rafted across the Rio Grande and loaded on small trucks for transportation to another location where larger trucks were then loaded. Thereafter, the marijuana was covered with produce to help facilitate its shipment.

Appellants, along with twelve others, were first indicted in September 1977 on fifteen counts charging conspiracy to import marijuana, substantive acts of importing marijuana, conspiracy to possess mari-

---

* Judge Gewin prepared the above opinion before his death May 15, 1981.

1. These issues were recently considered at length by this court in *United States v. Ocanas*, 628 F.2d 353 (5th Cir. 1980). *Ocanas* dealt with the appeal of five different codefendant-appellants from their convictions on the same charges in a separate jury trial. Thus, even though that decision is not res judicata as to the instant appeal, it is stare decisis, binding precedent, as to these four issues since it arose out of the same set of operative facts.

In any event, not only would we otherwise have treated these issues the same as Judge Thornberry did in the *Ocanas* opinion, but we find that the additional contentions made by the instant appellants on these points are without merit and thereby inconsequential. For example, one additional contention posed by the appellants pertained to the double jeopardy issue. This argument submits that the Government acted in bad faith thereby forcing the appellants to move for a mistrial. After a thorough review of the record, we find this allegation to be untrue. Therefore, we deem no further discussion of these four issues is necessary.

juana with intent to distribute, and substantive acts of possessing marijuana with intent to distribute, in violation of 18 U.S.C. § 2 (1976) and 21 U.S.C. §§ 841(a)(1), 846, 952(a), & 963 (1976). On December 30, 1977, thirteen of the original defendants entered into a plea bargaining agreement with the Government, however, the district court ordered a presentence investigation before it would decide to either reject or accept the pleas.

During the interim, on January 31, 1978, a superseding twenty-seven count indictment was returned against twenty-nine individuals. It not only added additional defendants and counts but it also enlarged the conspiracy time-frame and described the activities in more detail. Three days later, the plea bargains were rejected by the trial court and the original indictment was subsequently dismissed.

Trial on the superseding indictment[2] commenced on September 17, 1979, however, five days later, a mistrial was declared upon the appellants' request. It was occasioned by the nonresponsive answer of a Government witness to the effect that the appellants had earlier pled guilty. The cause was then transferred from the Brownsville Division to the Victoria Division within the same district for the new trial because the trial court reasoned that the great amount of publicity about the case in the area around the Brownsville Division made a fair trial there impossible.

On November 11, 1979, the Government moved to proceed, in the new trial upon the superseding indictment, against appellant Tamez only on Counts Ten and Seventeen and the remainder of the appellants on Count Ten alone.[3] All appellants waived their right to trial by jury. The new trial commenced in the Victoria Division on November 27, 1979. On January 25, 1980, all of the appellants, including Tamez, were found guilty on Count Ten, however, Tamez was found not guilty as to Count Seventeen. Each defendant was thereafter sentenced to various periods of imprisonment with special parole terms. Appeal to this court timely followed.

### III. *Venue Transfer*

■ Appellants submit that the transfer of venue[4] upon retrial to the Victoria Division prejudiced the defendants by imposing additional travel and lodging expenses upon them and their attorneys in addition to the expenses that became necessary in order to subpoena crucial witnesses. These alleged prejudicial effects do not rise to the level necessary to prove the trial judge abused his discretion by transferring venue so as to avoid an unfair trial from a great deal of publicity.

■ In criminal actions, the constitutional unit of venue is the district, not the division. Moreover, the trial judge has broad discretion in determining whether transfer is warranted. *Houston v. United States*, 419 F.2d 30 (5th Cir. 1969); *Bostick v. United States*, 400 F.2d 449 (5th Cir. 1968), *cert. denied*, 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 712 (1969). Fed.R.Crim.P. 18 notes that "[t]he court shall fix the place of trial *within the district* with due regard to the convenience of the defendant and the

---

**2.** Appellants unsuccessfully moved the trial court to dismiss the superseding indictment on double jeopardy grounds. Upon appeal from the district court's denial, this court affirmed in *United States v. Garcia*, 589 F.2d 249 (5th Cir.), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979).

**3.** Count Ten, 21 U.S.C. §§ 841(a)(1) & 846, charged the defendants with conspiracy to possess marijuana with intent to distribute. Count Seventeen, 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), charged Tamez with the substantive act of possessing marijuana with the intent to distribute.

**4.** Appellants quote a passage in their brief at page ten purportedly from 28 U.S.C. §§ 1393 and 1441 which states that "all prosecutions for crimes or offenses shall be had within the division of such districts where the same were committed, unless the court ... upon application of the Defendant, shall order the cause transferred ...." This language is not to be found in either section as cited. Instead, these sections apply only to civil actions, not criminal actions as in the instant appeal.

witnesses *and* the prompt administration of justice." (emphasis added). The trial court balanced these two considerations and determined that justice required that the cause be transferred. Accordingly, we find no abuse of discretion in this decision.

## IV. *Rule 615*

Fed.R.Evid. 615 reads as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Appellants contend that Rule 615 permits the excusal of only one Government investigative agent from its sequestration requirements. They argue that the trial judge's ruling allowing both the Drug Enforcement Administration (hereinafter referred to as the D.E.A.) case agent Robert Clark and the D.E.A. agent-witness James Beaupre to remain at the counsel table throughout the retrial was prejudicial error because Beaupre did not testify until the end of the trial and he tailored his testimony to that of earlier witnesses. Moreover, appellants submit that the two agents signaled other lay witnesses while such witnesses were on the stand testifying.

The appellants have misconstrued the rule by stating that it allows only one agent to be excused from its purview. We find that the decision as to how many will be excused from sequestration is just as discretionary with the trial judge as who will be excused. Both decisions will be reversed only upon a clear showing of abuse of such discretion. Since adequate grounds

existed for excusing both Clark and Beaupre under the second and third exceptions to the rule, *In re United States*, 584 F.2d 666 (5th Cir. 1978) (second exception); *United States v. Auten*, 570 F.2d 1284 (5th Cir.), *cert. denied*, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978) (second exception), then we find no abuse of discretion in excusing both men. Furthermore, it is discretionary [5] with the trial judge as to whether he will require an excused witness such as Beaupre to testify early in the course of the trial. No abuse of this discretion occurred when the judge permitted Beaupre to testify later in the trial. Finally, appellants' other allegations are not only quite speculative but they are not supported by the record and therefore without merit.

## V. *Benavidez' Testimony*

Appellants submit that F. Benavidez, a codefendant under the first indictment who turned into a star prosecution witness at the trial on the superseding indictment, was a paid Government informer planted in the defense camp during the pre-trial proceedings, the jury selection, and the private plea negotiations for the trial that was never held on the initial indictment. This subterfuge was said to have been in violation of the appellants' sixth amendment right to counsel. Furthermore, the defendants argue that the Government refused to make his status known pursuant to their valid demands for such information made under the mandate of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Accordingly, the appellants contend Benavidez' testimony should have been excluded.

As noted in *United States v. Ocanas*, 628 F.2d 353, 359 (5th Cir. 1980): [6]

The record, however, is wholly insufficient to permit us to rule on this point. Appellants rely on suspicion and inference, while the record reflects virtually nothing about the nature and extent of

---

5. The case cited by the appellants, *United States v. Nix*, 601 F.2d 214 (5th Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 196 (1979), that they understood to require that Beaupre testify early on really merely said that

such a decision is a suggested procedure. It is not mandatory.

6. *See supra* note 1, at 538.

the relationship between Benevides [*sic*] and the government, about what information he may have gathered and transmitted, or about the role that information played at trial. We accordingly decline to rule on this point, which appellants may raise in a 28 U.S.C. § 2255 petition. [footnote omitted].

We can do nothing but agree with this decision of our brothers in the companion case quoted above.[7]

## VI.  *Photographic Array*

 The appellants argue that the photographic array used at trial was unduly suggestive thereby creating a substantial likelihood of misidentification in violation of their rights to due process. However, we note that the admissibility of identification testimony hinges upon the reliability of such identification as gleaned from the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977); *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). Reliability is to be determined by considering: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time which has elapsed between the crime and the confrontation. *Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154; *Biggers*, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. We find, after viewing the totality of the circumstances and after a careful consideration of the factors listed above, that the reliability of the identification testimony in question outweighs any possibility of misidentification that could have been caused by the alleged suggestive photographic array.

## VII.  *Sufficiency of the Evidence*

 All the evidence, as well as any inferences that may be drawn therefrom, must be viewed in a light most favorable to the Government. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We have thoroughly reviewed the record and conclude that the evidence was sufficient to convict the appellants.

## VIII.  *Conclusion*

For the reasons set forth above, we affirm the district court's decision without prejudice to the appellants' right to seek 28 U.S.C. § 2255 habeas corpus relief.

AFFIRMED.

---

7. If appellants choose to seek habeas corpus relief, we would suggest that the district court, if the evidence shows it necessary, interpret any alleged sixth amendment violation in light of *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).