**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack L. DICKIE, Defendant-Appellant.**

No. 85–2201
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 25, 1985.

Warren Burnett, Galveston, Tex., Larry Zinn, San Antonio, Tex., William T. Habern, Sugar Land, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Sidney Powell, Wayne F. Speck, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge.

At issue on appeal is whether the district court abused its discretion by transferring this action from one division to another in the same district, by restricting cross-examination, and by not striking certain information in the presentence report. Because we find that the district court did not abuse its discretion or err, we affirm.

I

Between April and June 1979, the appellant Jack Dickie and codefendants Roberto Garcia and Mike Hernandez, devised a scheme to defraud Larry Burnett and Brandt Starrett of $200,000. In order to avoid discovery of their scheme, Dickie and his codefendants attempted to set up Starrett's and Burnett's arrests by Mexican authorities while in possession of illegal firearms exported to Mexico. The plan was foiled, however, when Starrett and Burnett fled from Mexico before being captured.

The plan of Dickie and his codefendants was discovered and in May, 1984, Dickie was indicted and charged with five counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to commit firearm violations in violation of 18 U.S.C. § 371, 22 U.S.C. § 2778, 18 U.S.C. § 924(b), and 26 U.S.C. § 5861(i), one count of illegal export of defense articles without a license in violation of 22 U.S.C. § 2778, one count of export of firearms with intent to commit a felony in violation of 18 U.S.C. § 924(b), and one count of illegal possession of firearms that did not have serial numbers in violation of 26 U.S.C. § 5861(i). Garcia and Hernandez were also indicted on some, but not all, of these charges.

The trial was held in the San Antonio Division of the Western District of Texas and lasted two weeks. The jury, however, was unable to agree on a verdict and the court declared a mistrial. Because of the pervasive publicity surrounding this trial and the small available jury panel in the San Antonio Division, the judge, *sua sponte,* changed the venue for the retrial to the Waco Division of the same district.

Dickie, the only defendant whose case was to be retried immediately, opposed the transfer of venue by oral motion, which was denied by the court.

Following the second trial, Dickie was found guilty of the first seven counts of the indictment. He was sentenced to a total of 20 years imprisonment and fines totalling $115,000. He filed a timely notice of appeal.

II

Dickie presents three contentions on appeal. First, he contends that the district court abused its discretion in changing the venue for the second trial. Second, Dickie contends that the district court abused its discretion in imposing limitations on cross-examination. Finally, he contends that the district court erred in failing to strike part of the content of the presentence report. Because these arguments are meritless, we affirm the district court.

A.

Dickie's primary argument on appeal is that the district court erred in changing the venue for the second trial. Dickie's position is that a trial judge must bear a heavy burden to justify the transfer of venue within a judicial district over the objections of a defendant. He strongly urges that the trial court's finding of prejudicial publicity was incorrect. He further argues that the difficulties of holding a new trial in the San Antonio Division within the time required by the Speedy Trial Act, 18 U.S.C. § 3161(e) were not insurmountable. Accordingly, he contends that the trial court was not justified in changing venue within the district under Fed.R.Crim.P. 18 and abused its discretion in doing so.

 A district court judge has "broad discretion in determining whether transfer is warranted." *United States v. Alvarado,* 647 F.2d 537, 539 (5th Cir.1981). Reversal is proper only where a party demonstrates a "substantial ground for overturning the district court's [decision regarding an] intradistrict transfer." *United States v.*

*Malmay,* 671 F.2d 869, 876 (5th Cir.1982). We must review a decision to change venue within a district under the abuse of discretion standard. *Alvarado,* 647 F.2d at 539; *United States v. McRary,* 616 F.2d 181, 185 (5th Cir.1980).

 There is no constitutional right to trial in a particular division of a judicial district. *Franklin v. United States,* 384 F.2d 377, 378 (5th Cir.1967), *cert. denied,* 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1147 (1968). The venue provision of the sixth amendment provides only for trial in the judicial district where the crime was committed. *Alvarado,* 647 F.2d at 539; *United States v. James,* 528 F.2d 999, 1021 (5th Cir.), *cert. denied,* 429 U.S. 959, 97 S.Ct. 382, 50 L.Ed.2d 326 (1976). Prior to 1966, there was a statutory right to trial in the division where the offense was committed. Fed.R.Crim.P. 18, Notes of Advisory Committee to 1966 Amendment. That right has been eliminated and trial need now be held only "in a district in which the offense was committed." Fed.R.Crim.P. 18. "The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice." *Id.* The convenience of the prosecution, however, is not a factor to consider in changing venue. *DuPoint v. United States,* 388 F.2d 39, 44 (5th Cir.1967).

 In deciding whether to transfer venue, the trial court must balance the statutory factors of the convenience of the defendant and witnesses and the prompt administration of justice. *Alvarado,* 647 F.2d at 539–40. The district court in this case explicitly weighed these factors, finding that the transfer did not inconvenience the defendant, that it slightly inconvenienced some witnesses, and that it strongly promoted the prompt administration of justice by avoiding problems raised by extensive publicity and the exigencies of the San Antonio Division's criminal docket that would preclude compliance with the Speedy Trial Act, 18 U.S.C. § 3161(e).

 Dickie concedes that a retrial might not have been possible in the San Antonio Division until eighty-five days after the mistrial because of the exigencies of the San Antonio docket but argues that he was willing to waive his own right to a speedy trial. A defendant's willingness to waive this right, however, does not alter a court's duty to consider the prompt administration of justice as a factor. Congress has stated that retrials "shall commence within 70 days from the date ... the mistrial becomes final." 18 U.S.C. § 3161(e). Thus, the district court properly found that the prompt administration of justice weighed in favor of the transfer.

This Court has found no abuse of discretion where a "trial court balanced [the statutory] considerations and determined that justice required that the cause be transferred." *Alvarado,* 647 F.2d at 540. In Dickie's case, none of the statutory considerations weighed in favor of denying the transfer. We reject any argument that the *preference* of the defendant is determinant under these circumstances.

 Dickie contends that the district court erred in considering the effect of publicity surrounding the trial in the San Antonio Division. We disagree. The district court found that there had been substantial publicity in the San Antonio Division and no publicity in the Waco Division. We cannot find that the district court abused its discretion in finding that the extensive publicity—documented by fifty-seven pages of the record—may have rendered it impossible to remove the prejudicial taint from a jury in the San Antonio Division. *See Malmay,* 671 F.2d at 876; *Alvarado,* 647 F.2d at 539; Fed.R.Crim.P. 18, Notes of Advisory Committee to 1966 Amendment.

Thus, we conclude that the trial court did not abuse its discretion in limiting its consideration to the statutory factors.

### B.

Second, Dickie challenges the district court's ruling that no testimony could refer to the fact that the case had been tried

previously or that cross-examinations could not specifically refer to events in the first trial. The heart of Dickie's objection to the ruling on cross-examination is that it precluded him from impeaching a witness by establishing that "he had not testified at the first jury trial [which] was probably the best form of impeachment of [the witness] available to the defense." Cross-examining the witness regarding his failure to testify, he argues, would have "raised the inference that [the witness] was not used because the government lacked faith in his testimony."

■■■ The extent of cross-examination is within the sound discretion of the trial court and its decision will not be overturned except for abuse of discretion. *United States v. Ackal,* 706 F.2d 523, 532 (5th Cir.1983). Here it is not apparent how the trial court can be said to have abused its discretion by limiting cross-examination as it did. The jury was informed that at a prior hearing that the Assistant United States Attorney prosecuting the case had decided not to use this witness's testimony. When the jury is informed of a point that would have been brought out on cross-examination, failure to permit cross-examination on that matter is not prejudicial and therefore is not error. *Ackal,* 706 F.2d at 532. Dickie has failed to show that the ruling on cross-examination constituted an abuse of discretion, or that he suffered prejudice as a result. We therefore reject his claim.

### C.

Finally, Dickie objects to the inclusion in his presentence report of a victim impact statement, hearsay statements regarding prior acts, and comments regarding extraneous crimes.

■■■ Dickie first contends that the inclusion of a statement that the victims suffered an unrecovered loss of $200,000 as a result of his actions was in error because a victim impact statement was not required for crimes committed prior to 1982. *See* Fed.R.Crim.P. 32(c), Amendments. Dickie, however, cites no authority for the claim that the inclusion of such information was "prohibited by law." Since Dickie raised no objection to this portion of the presentence report at sentencing, its inclusion in the record can be reviewed only for "plain error," Fed.R.Crim.P. 52(b), and reversed only if necessary to prevent "manifest injustice." *Self v. Blackburn,* 751 F.2d 789, 793 (5th Cir.1985). Basing a sentence on the loss suffered by the victim certainly is not manifestly unjust.

■■■ Dickie also objects to the inclusion of a statement regarding his father's comments concerning Dickie's cruelty to animals as a youth. The court explicitly stated that it "[would] not consider [that statement] at all in connection with passing sentence." Since the information was not used in sentencing, the inclusion of information regarding Dickie's cruelty to animals was, at most, harmless error.

■■■ Finally, Dickie objects to the inclusion in the presentence report of a statement that, he asserts, links him to murder for profit. While Dickie objected to some statements regarding murder for profit, which were removed from the record, he did not object at trial to the inclusion of the statement at issue on appeal. The statement in question links Dickie to murder for profit only obliquely and its inclusion in the presentence report is not plain error.

### III

For the reasons set out in this opinion, the judgment of conviction and sentencing of Jack L. Dickie is

AFFIRMED.