**In re Lilton CHESSON, Jr. and Randall Chesson, Petitioners.**

**No. 90–4160.**

United States Court of Appeals, Fifth Circuit.

March 12, 1990.

Michael S. Fawer, P.L.C., Denise LeBoeuf, New Orleans, La., for Lilton Chesson.

Thomas L. Lorenzi, Lake Charles, La., for Randall Chesson.

Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., and Duro J. Duplechin, Asst. U.S. Atty., Lafayette, La., for appellee.

Before POLITZ and GARWOOD, Circuit Judges.[*]

PER CURIAM:

Lilton Chesson, Jr. and Randall Chesson, defendants in the criminal proceeding entitled *United States of America v. Lilton Chesson, Jr. and Randall Chesson*, No. CR 89–20029–01/02, United States District Court for the Western District of Louisiana, seek a writ of mandamus to vacate the order entered by Judge Donald E. Walter on March 1, 1990, transferring trial of the case from Lake Charles, Louisiana to Monroe, Louisiana. For the reasons assigned we decline to issue the writ.

The Chessons are brothers. They own and operate a family business through several corporate entities, including Chesson Oil Company, Inc., Cameron Offshore Services, and Industrial Marine, Inc. The business employs approximately 60 employees at its Cameron, Louisiana facility and several office personnel at its Lake Charles, Louisiana facility. Cameron is approximately 50 miles south of Lake Charles. Lilton Chesson is the chief operating officer of the family business, with daily hands-on responsibilities. Randall Chesson is pastor of Parkview Baptist Church in Sulphur, Louisiana, some 13

[*] This matter is being handled by a quorum, 28 U.S.C. § 46(d).

miles west of Lake Charles, and the administrator of Parkview Christian School.

The Chessons are charged with violating 26 U.S.C. § 7201 by filing false personal and corporate income tax returns, and with conspiracy to defraud the United States by obstructing the Internal Revenue Service in its tax collection function. The indictment was returned in Lake Charles and the case was assigned to Judge Earl Veron, the then-active judge on the court residing in Lake Charles. Judge Veron handled several pretrial motions and set the case for trial in Lake Charles on March 19, 1990.

In late February Judge Veron took senior status because of compelling health reasons. The case was reassigned to Judge Donald E. Walter, a judge of the Western District of Louisiana residing in Monroe. Upon being advised by counsel that the government expected to subpoena in excess of 100 witnesses, that the defense expected to call a score or more witnesses, and that the case would take three weeks or more to try, Judge Walter stated that he would be prepared to hear the case as scheduled by Judge Veron but was inclined to transfer the trial to Monroe. The defendants objected. After hearing their objections Judge Walter formally ordered the case transferred.

Monroe is in northeast Louisiana; Lake Charles is in southwest Louisiana about 150 miles distant. There is no direct airline service between the two cities. Defendants complain that the transfer imposes a burden, an added expense, and is inconvenient to them and their witnesses. They assert that the trial will involve numerous corporate records, suggesting that the government intends to introduce between 750 and 1,000 documents. They state that the records the defense will need to have at its disposal during the trial fill 53 transfer boxes. They decry the trouble and expense of establishing a place for the defense team in Monroe, whereas in Lake Charles their corporate offices are available, as is the law office of one of their attorneys. Their lead defense counsel is from New Orleans.

· The Chessons state that they intended to perform their respective corporate and pastoral responsibilities during the course of the trial by working during recesses and after court concludes each day. They contend that the transfer to Monroe will interfere with those plans and cause them a substantial financial loss. They also note that the trial in Monroe would take them away from the support provided by their family, co-workers and friends who could not daily journey there.

In ordering the transfer Judge Walter recounted that this case was reassigned to him on short notice because of the disability retirement of Judge Veron, that he has other civil and criminal cases on his docket which require his attention, that a three-week, and perhaps longer, trial in Lake Charles would seriously impact on the cases previously assigned to his docket, an impact he could lessen by being available in Monroe before court sessions, during recesses, and after court adjourned. Judge Walter ordered the government to defray the costs of defendants' witnesses attending in Monroe and offered defendants assistance in securing favorable motel rates.

▮ Whether tried in Lake Charles or Monroe the trial will cause inconvenience to the Chessons and the witnesses. Convenience is not an irrelevant factor. But it is not the only factor to be considered by the court in deciding where a criminal case is to be tried.

▮ The Constitution provides certain protections to a defendant in a criminal trial. One is that a defendant may not be taken to far distant places for trial, as the Declaration of Independence charged King George III with doing. Article III of the Constitution mandates that the trial be held in the state where the crime was committed. The sixth amendment refined that requirement to provide that the criminal trial must be held in the district in which the alleged crime occurred.

The trial of the Chessons must be held in the Western District of Louisiana, but there is no constitutional right to trial in a particular division within that district. *United States v. Dickie*, 775 F.2d 607 (5th Cir.1985); *Franklin v. United States*, 384

F.2d 377 (5th Cir.1967), *cert. denied,* 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1147 (1968). Prior to 1966, Rule 18 of the Federal Rules of Criminal Procedure provided a statutory right to trial in the division where the offense allegedly occurred. In 1966 that statutory right was eliminated. In 1979, Rule 18 was again amended to add as a factor "the prompt administration of justice." The Rule now reads:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

█ In deciding the place of trial within the district the court must balance the statutory factors of the convenience of the defendant and witnesses with the prompt administration of justice. *Dickie; United States v. Alvarado,* 647 F.2d 537 (5th Cir. 1981). In doing this balancing, the district court is vested with broad discretion. *Id.*

█ The Chessons forcefully argue that the 1979 amendment adding consideration of "the prompt administration of justice" was triggered by the strictures of the Speedy Trial Act. We agree. The Chessons further argue that this limits consideration of the Speedy Trial Act solely as it affects the defendants in the case under consideration. They remind that they have waived their Speedy Trial Act rights. We find this proposition to be an overly myopic view of the phrase "prompt administration of justice" and reject it.

As we have signaled in earlier cases, *Dickie* and *United States v. Kaufman,* 858 F.2d 994 (5th Cir.1988), the prompt administration of justice includes more than the case at bar; the phrase includes the state of the court's docket generally. The court must balance not only the effect the location of the trial will have upon the defendants and their witnesses, but it must weigh the impact the trial location will have on the timely disposition of the instant case and other cases. Willingness of a defendant to waive Speedy Trial Act

rights "does not alter a court's duty to consider the prompt administration of justice as a factor." *Dickie,* 775 F.2d at 610. In *Kaufman* the district court transferred the trial from Austin to Waco because it concluded that to hold a lengthy trial in Austin the judge would have to ignore his responsibilities to the court's docket in Waco. We perceived no error and held that "[i]n the best interests of judicial economy and efficiency, the district court held that the trial should be conducted in Waco, and in so holding did not abuse its discretion." *Kaufman,* 858 F.2d at 1006.

In the case at bar considerations of the Monroe docket tipped the scale for Judge Walter. On the record before us we are not prepared to say that this decision was the product of a clear and indisputable abuse of discretion.

█ Mandamus is an extraordinary writ. It is charily used and is not a substitute for an appeal. We will issue the writ only in the absence of other adequate remedies when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the appellate court. *In re First South Savings Association,* 820 F.2d 700 (5th Cir.1987); *United States v. Crawford Enterprises,* 754 F.2d 1272 (5th Cir.1985). The limited record before us presents no such basis for issuance of a writ of mandamus. In so ruling we are mindful that with the retirement of Judge Veron the Western District of Louisiana has only four of the six authorized judges. This ruling is without prejudice to the Chessons to raise on appeal a claim of error should the transfer order result in a trial so inconvenient and unfair to the Chessons, which so outweighs the other statutory factor, that the transfer constituted an abuse of the district court's broad discretion.

Writ of Mandamus DENIED.