**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Samuel DUNCAN, Jr., Grace Duncan, Gay Nell Duncan, Marshall Sutton, Angela F. Turner, Arthur D. Wilson, and Oscar L. Wilson, Defendants–Appellants.**

No. 89–4849.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1990.

Rehearing Denied Jan. 16, 1991.

Bobby L. Culpepper (court appointed), Jonesboro, La., for defendants-appellants.

William J. Flanagan, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before GOLDBERG, KING, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

The defendants raise a litany of issues to challenge their convictions for mail fraud and conspiracy. They contend that the district court improperly denied their motion for change of venue and erred in fourteen different evidentiary rulings. They also argue that the court erred by denying their motion for mistrial based on a comment by the judge and by refusing their proposed jury instructions. Finally, they assert that the evidence adduced at trial was insufficient to sustain their convictions and that the court imposed excessive sentences. We find no error and affirm the judgment of the district court.

FACTS

The defendants participated in a scheme to defraud insurance companies. Over a period of several years, each defendant purchased numerous hospitalization policies. Each policy provided that the insured would receive a predetermined sum of money for each day spent in the hospital, regardless of other coverage.

The indictment charged that on many occasions, the defendants sought admission

to hospitals after reporting accidents that never occurred or after staging accidents. According to several witnesses, the defendants participated in planned collisions in which a driver, carrying a carload of conspirators, intentionally swerved out of his lane and careened into another car.

The evidence indicated that Samuel Duncan and Grace Duncan, husband and wife, were the ringleaders of the conspiracy. Each was hospitalized over twenty times and collected over $300,000 in insurance proceeds. Mr. Duncan's sister Gay Nell, another defendant, entered the hospital three times within a seven-month period and collected over $50,000. The insurance companies mailed the Duncans checks for these amounts.

The other four defendants were close friends and relatives of the Duncans. Each of the four was hospitalized between ten and nineteen times during a five-year period and each collected over $75,000. These defendants also received payments by mail.

The government indicted the seven defendants for mail fraud and conspiracy. After a two-week trial, the jury found all seven defendants guilty.

DISCUSSION

*Denial of Intradistrict Transfer*

The defendants first argue that the district court erred in denying their motion for change of venue from Monroe to Alexandria. They assert that this intradistrict change of venue was required because of their residence and because of unfavorable pretrial publicity in Monroe. Specifically, they claim that a fair trial was impossible because of a barrage of publicity generated by the earlier trial of different defendants for the same offenses. We disagree.

The sixth amendment requires that a criminal trial be held in the district in which the alleged crime occurred. *In re Chesson*, 897 F.2d 156, 158 (5th Cir.1990). These defendants, therefore, had a constitutional right to trial in the Western District of Louisiana; however, they had "no constitutional right to trial in a particular division within that district." *Id.* (citing *United States v. Dickie*, 775 F.2d 607, 610 (5th Cir.1985); *Franklin v. United States*, 384 F.2d 377, 378 (5th Cir.1967), *cert. denied*, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1147 (1968)).

An intradistrict transfer is not required absent a strong showing of prejudice. *United States v. Dickie*, 775 F.2d 607, 609 (5th Cir.1985); *United States v. Malmay*, 671 F.2d 869, 876 (5th Cir.1982). The defendants provide no evidence of extensive pretrial publicity other than unsubstantiated assertions in their brief. Furthermore, they have failed to show that any publicity was inflammatory and that it resulted in pervasive community prejudice. Absent such a showing, we have no reason to believe that the district judge abused his discretion in denying the defendants' request for an intradistrict transfer. *See United States v. Parker*, 877 F.2d 327, 330 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989).

*Evidentiary Rulings*

The defendants contend that the district court erred in fourteen different evidentiary rulings. Common to all these challenges is the abuse-of-discretion standard with which we review rulings on the admission of evidence. *See United States v. Hutson*, 821 F.2d 1015, 1019 (5th Cir.1987); *United States v. Acosta*, 763 F.2d 671, 693 (5th Cir.), *cert. denied sub nom. Weempe v. United States*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985). The defendants' complaints on evidentiary rulings can be grouped into four general categories.

*1. Admission of Records*

The defendants first claim that the court erred in admitting into evidence the records of insurance companies. They challenge the admissibility of these records on a variety of grounds, arguing that (1) they were not sufficiently authenticated under rule 901;[1] (2) they are not proper

---

1. Rule 901 provides, in relevant part:

The requirement of authentication or identifi-

business records under rule 803(6);[2] and (3) they were made by a person without personal knowledge in violation of rule 602.[3]

Representatives of insurance companies came to court and authenticated the records. The prosecutor clearly established the prerequisites for admitting the records under the business records exception.[4] But the defendants argue that the insurance company records contained other unauthenticated medical records and statements by doctors. They contend that these medical records and statements are hearsay not falling within the business records exception of rule 803(6).

We reject this argument. The insurance companies compiled their records from the business records of hospitals. Because the medical records from which the insurance company records were made were. themselves business records, there was no accumulation of inadmissible hearsay. *See Hutson*, 821 F.2d at 1019.

There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy. *United States v. Iredia*, 866 F.2d 114, 119–20 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989); *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 533 (5th Cir.1986). Furthermore, there is no requirement that the records be created by the business having custody of them. *Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1319 (5th Cir. Unit A 1981); *United States v. Veytia–Bravo*, 603 F.2d 1187, 1189 (5th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980).

Instead, the "primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced." *Veytia–Bravo*, 603 F.2d at 1189. The district court has great latitude on the issue of trustworthiness. *Hutson*, 821

---

cation as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
Fed.R.Evid. 901(a).

**2.** Rule 803(6) provides:

Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
Fed.R.Evid. 803(6).

**3.** Rule 602 provides, in relevant part:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.
Fed.R.Evid. 602.

**4.** *See* note 2. For example, the following exchange occurred between the prosecutor and a witness:

Q. Your full name, Sir?
A. George Beverly Walker, Jr.
Q. And by whom are you employed?
A. J.C. Penney Life Insurance Company.
Q. And in what position?
A. Senior Vice President, Insurance Operations.
Q. Have you produced records of your corporation?
A. Yes I have.
Q. Pursuant to a subpoena?
A. Yes, Sir.
Q. Are these records kept in the regular course of your company's business?
A. Yes, they are.
Q. Are these records accurate?
A. Yes.
Q. Is it the regular practice of your company to keep such records?
A. Yes, it is.
 . . . .
Q. [Let me] show you what's been marked for identification purposes as G–36–SDA, and ask you what is that?
A. This is a copy of the application by Samuel Duncan.... We have two applications as Mr. Duncan had two policies with our company....
Q. Are you familiar with how your company generates and maintains and stores records?
A. Yes.
Q. How are these applications generated?
A. Through direct mail.

F.2d at 1020; *Mississippi River Grain Elevator, Inc.*, 659 F.2d at 1319. Hospitals and insurance companies rely on these records in conducting business. We hold, therefore, that the district court did not err in admitting them under Federal Rule of Evidence 803(6) upon proper authentication by their custodian.

 Even if the insurance company records contained some medical information not taken from actual hospital records, that information was admissible as non-hearsay evidence. The Federal Rules of Evidence exclude from the category of hearsay any "statement by a person authorized by the party to make a statement concerning the subject" and any "statement by the party's agent ... concerning a matter within the scope of the agency." Fed.R.Evid. 801(d)(2)(C)–(D).

A patient routinely authorizes the release of medical records for use by insurance companies. A medical provider without express authority to release information would be acting as the patient's agent in obtaining payment of medical expenses from insurance companies. We therefore conclude that all information in the insurance company records was admissible either under the business records exception or as nonhearsay evidence.

### 2. Testimony of Kathy Riggs

 The defendants also claim that the testimony of Kathy Riggs, a former supervisor of one defendant, was inadmissible because it was irrelevant or unduly prejudicial. The prosecutor showed Riggs a disability statement purportedly prepared by the defendant's employer. Although the signature at the bottom read "Kathy Riggs," the witness denied that the signature was hers.

The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determi-

nation of the action more probable than it would be without the evidence." Fed.R. Evid. 401. The testimony in question was obviously relevant, because a forged disability statement increases the probability that the defendant's claims were fraudulent. This evidence tended to rebut the contention that the defendants innocently filed insurance claims for genuine medical problems.

It is true that someone other than a defendant could have forged the supervisor's signature on the disability statement. However, since it is unlikely that anyone else had a motive to forge this document, an inference of guilt could also be drawn. Since a reasonable inference could be drawn from this evidence, the evidence was both relevant and admissible.

Under Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R. Evid. 403. When a defendant contends that admitted evidence was unduly prejudicial, "[t]he duty of the appellate court is to assess its relevancy and probative value, and the district court's ruling will be reversed 'rarely and only after a clear showing of prejudicial abuse of discretion.'" *United States v. Shaw*, 701 F.2d 367, 386 (5th Cir.1983) (quoting *United States v. Davis*, 546 F.2d 583, 592 (5th Cir.), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977)), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984).

 "Relevant evidence is inherently prejudicial...." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). But under rule 403, a court should exclude relevant evidence only if its probative value is substantially outweighed by danger of *unfair* prejudice. *Id.* This evidence, which consists of ten lines in a trial transcript of over 1,700 pages, is neither shocking nor gruesome.[5] We do not be-

---

5. The relevant testimony was as follows:
 Q. [Let me] show you what's been marked into evidence as G–22 ATB–16 and it's one document. Does this have your name on it?
 A. Yes, it does.

 Q. And in the signature capacity?
 A. Yes.
 Q. Is that how you spell your name?
 A. Yes, it is.

lieve that the admission of evidence showing that someone forged a disability statement was unfairly prejudicial to the defendants. We conclude, therefore, that the evidence was relevant circumstantial evidence and that the court did not err in admitting it.

### 3. Summary Evidence

■ The defendants argue that the district court abused its discretion by allowing an FBI agent to summarize in his testimony the voluminous insurance company records that had already been introduced into evidence. They further argue that the court erred in allowing the prosecutor to present summary charts prepared by the agent. These arguments are without merit.

■ Federal Rule of Evidence 1006 provides that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed.R.Evid. 1006. This rule requires only that the underlying records be voluminous and that in-court examination be inconvenient. *United States v. Stephens*, 779 F.2d 232, 239 (5th Cir.1985). We review the judge's decision to admit such a summary only for an abuse of discretion. *United States v. Means*, 695 F.2d 811, 817 (5th Cir.1983).

We find no abuse of discretion. The underlying records were undisputably voluminous, consisting of hundreds of exhibits. Examination of the individual records would have been burdensome and time-consuming without the aid of summaries. *See United States v. Evans*, 572 F.2d 455, 491 (5th Cir.), *cert. denied sub nom. Tate v. United States*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

Furthermore, the prosecutor used the summaries in part to show the recurring pattern of hospital admissions among a large group of conspirators. We cannot rationally expect an average jury to compile summaries and to create sophisticated flow charts to reveal patterns that provide important inferences about the defendants' guilt.

Even if the admission of summary evidence might have had some potential for prejudice, we consider any possible harmful effect neutralized by the following instruction given by the judge:

> Ladies and gentlemen, these charts are not evidence. They are data compilations which [the agent] says he has summarized from the evidence already admitted into the record. If you find that these summaries do not comport with the evidence admitted, you are instructed to disregard any summary that is not supported by the evidence admitted into the record.

*See United States v. Smyth*, 556 F.2d 1179, 1184 (5th Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977).

■ The defendants mistakenly argue that the rule allows the introduction of summary evidence only if the voluminous documents have not been introduced into evidence. But "[t]he fact that the underlying documents are already in evidence does not mean that they can be 'conveniently examined in court.'" *Stephens*, 779 F.2d at 239 (citing *United States v. Scales*, 594 F.2d 558, 562 (6th Cir.1979), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979)). The defendants' interpretation of rule 1006 is inconsistent with one proper method of laying a foundation for the admission of summary evidence—admitting the documents on which the summary is based. *Id.*

### 4. Limitation of Cross–Examination

The defendants contend that the district court erred in restricting their cross-examination of two of the government's witnesses. We note initially that "[l]imitation of the scope and extent of cross-examination is a matter committed to the sound discretion of the trial judge reviewable only for a clear abuse of that discretion." *United*

---

Q. Is this the time when [the defendant] was employed by you?
A. It was in 1984, yes.

Q. Is that your signature?
A. No.
[Prosecutor]: No further questions.

*States v. Gordon,* 780 F.2d 1165, 1175 (5th Cir.1986).

■ The defendants first object to the court's refusal to allow them to cross-examine a co-conspirator about an incident in which he allegedly spit in the face of a hospital security guard. In an argument totally devoid of legal merit, the defendants contend that the district court's ruling prevented them from showing that the co-conspirator had "a complete disregard of law and any authority."

The defendants ignore the clear mandate of Federal Rule of Evidence 608(b), which prevents parties from attacking a witness's credibility by inquiring into a specific incident of conduct unless it resulted in a criminal conviction or is probative of the witness's character for truthfulness. Fed. R.Evid. 608(b). The defendants provide no evidence that this incident resulted in a criminal conviction. And we fail to see how the act of spitting at a guard could reveal anything about a witness's character for truthfulness.

■ The defendants also argue that the court erred in refusing to allow them to cross-examine an FBI agent about three separate issues. First, they sought to ask him about a plea bargain agreement between the government and two individuals charged in the indictment with the defendants. These two individuals were not witnesses at the trial. The court acted within its considerable discretion in refusing to allow evidence with little or no probative value to confuse the issues and waste the court's time. *See* Fed.R.Evid. 403; *Fury Imports, Inc. v. Shakespeare Co.,* 625 F.2d 585, 589 (5th Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 349 (1981).

■ Second, the defendants tried to cross-examine the agent about the purpose of plea bargain agreements. The district court also acted within its discretion in refusing to allow this cross-examination. All witnesses who had entered into plea bargain agreements had been extensively

cross-examined about their individual agreements. An FBI agent is not an expert on plea bargain agreements. This evidence was clearly excludable as cumulative under Federal Rule of Evidence 403. *See United States v. Davis,* 639 F.2d 239, 244 (5th Cir. Unit B 1981).

■ Third, the defendants sought to cross-examine the FBI agent about the contents of an accident report that had already been admitted into evidence. Defense counsel asked the agent about the report's contents, and the agent replied, "I don't recall." The court clearly acted within its discretion under rule 403 in preventing the defendants from asking this witness anything more about the report. The defendants were not in any way restricted from arguing their point to the jury, because the report was already in evidence. *See McRae,* 593 F.2d at 707.

### Judge's Comment on the Evidence

■ The defendants argue that the judge erred in refusing to grant a mistrial after he improperly commented on the evidence. This argument is frivolous. The comment, "The only testimony has been by mail," was merely a summary of the testimony of an insurance company representative who had just described how the company delivered its checks. The comment was nothing more than a reminder to the cross-examiner that the question about method of delivery had already been answered.

"[A] federal judge is not a mere moderator of proceedings.... He may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those previously presented, and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion." *Moore v. United States,* 598 F.2d 439, 442 (5th Cir.1979) (citations omitted); *see Iredia,* 866 F.2d at 119. Even though the comment was entirely proper, the judge promptly took the extra precaution of instructing jurors that they were the sole judges of the evidence.[6] It is preposterous

---

6. Immediately after making the comment, the judge said:

You ... are the sole judges of the evidence. If I say something that you don't think was

to suggest that the judge's comment rose to the level of judicial intervention that "could have led the jury to a predisposition of guilty by improperly confusing the functions of judge and prosecutor." *United States v. Davis,* 752 F.2d 963 (5th Cir.1985); *Iredia,* 866 F.2d at 119; *United States v. Westbo,* 746 F.2d 1022, 1027 (5th Cir.1984).

*Refusal of Requested Jury Instructions*

The defendants argue that the judge committed prejudicial error by refusing to adopt their proposed jury instructions. The refusal to deliver a requested instruction constitutes reversible error only if the instruction: (1) was substantially correct; (2) was not substantially covered in the charge delivered to the jury; and (3) concerned an important issue so that the failure to give it seriously impaired the defendant's ability to present a given defense. *United States v. Burroughs,* 876 F.2d 366, 369 (5th Cir.1989); *United States v. Mollier,* 853 F.2d 1169, 1174 (5th Cir. 1988).

The defendants have not made the slightest attempt to show that the refusal of their instructions constitutes reversible error. We conclude, therefore, that the judge acted within his substantial latitude in framing his jury instructions. *See United States v. Kimmel,* 777 F.2d 290, 293 (5th Cir.1985), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986).

*Sufficiency of the Evidence*

The defendants contest the sufficiency of the evidence to sustain their convictions for conspiracy and mail fraud. We must sustain the guilty verdict if, taking the view most favorable to the government, any rational jury could have found the essential elements beyond a reasonable doubt. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Gonzales,* 866 F.2d 781, 783 (5th Cir.), *cert. denied,* 490 U.S. 1093, 109 S.Ct. 2438, 104 L.Ed.2d 994 (1989); *United States v. Jimenez,* 496 F.2d 288, 290 (5th Cir.1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660

proven, you are at liberty to disregard it completely because you are the sole judges of the

(1975). Neither the jury nor this Court is obligated to examine each circumstance in isolation. *Gonzales,* 866 F.2d at 783; *United States v. Magee,* 821 F.2d 234, 239 (5th Cir.1987).

We must accept as established all reasonable inferences that tend to support the jury verdict, and any conflicts in the evidence must be resolved in favor of the verdict. *United States v. Clark,* 741 F.2d 699, 703 (5th Cir.1984). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

The defendants were convicted of mail fraud in violation of 18 U.S.C. § 1341 (1988). The two basic elements of this offense are (1) participating in a scheme to defraud and (2) causing a mailing for the purpose of executing the scheme. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435, 444 (1954); *United States v. Rochester,* 898 F.2d 971, 976 (5th Cir.1990); *United States v. Rico Indus., Inc.,* 854 F.2d 710, 712 (5th Cir.1988), *cert. denied sub nom. Wilkins v. United States,* 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989).

Although the statute requires that the mailing be for the purpose of executing the scheme, "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element." *United States v. Young,* 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548 (1914); *Rico Indus., Inc.,* 854 F.2d at 712–13. As long as the mailing is part of the execution of the fraud or incident to an essential part of the scheme, the evidence is sufficient to sustain a conviction for mail fraud. *See Pereira,* 347 U.S. at 8, 74 S.Ct. at 363; *Rico Indus., Inc.,* 854

evidence.

F.2d at 712. Mailings that distribute the proceeds of the scheme to the perpetrators are incident to an essential part of the scheme. *Rico Indus., Inc.*, 854 F.2d at 712 (citing *Pereira*, 347 U.S. at 8, 74 S.Ct. at 362).

To cause a mailing, a defendant must act "with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen," even though the use of the mails was not actually intended. *Pereira*, 347 U.S. at 8–9, 74 S.Ct. at 363; *United States v. Shryock*, 537 F.2d 207, 209 (5th Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977). As long as there is sufficient evidence to connect the defendant to the fraudulent scheme involving use of the mails, the defendant need not do any of the actual mailing. *Shryock*, 537 F.2d at 209; *Milam v. United States*, 322 F.2d 104, 107 (5th Cir. 1963), *cert. denied sub nom. Kimball v. United States*, 377 U.S. 911, 84 S.Ct. 1174, 12 L.Ed.2d 181 (1964).

The defendants were also convicted under the conspiracy statute, 18 U.S.C. § 371 (1988). A conviction for conspiracy requires the government to prove beyond a reasonable doubt that two or more persons reached an agreement to commit a crime and that one of the conspirators committed an overt act in furtherance of the agreement. *United States v. Ortiz–Loya*, 777 F.2d 973, 981 (5th Cir.1985); *United States v. Saenz*, 747 F.2d 930, 937 (5th Cir.1984), *cert. denied sub nom. Solis v. United States*, 473 U.S. 906, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985).

Because a plot is nurtured in secrecy, the agreement often cannot be proved by direct testimony. For this reason, the existence of the agreement or common purpose may rest on inferences drawn from relevant and competent circumstantial evidence. *See United States v. Davis*, 810 F.2d 474, 476 (5th Cir.1987); *United States v. Crockett*, 534 F.2d 589, 594 (5th Cir.1976). Once the government has produced evidence of an illegal conspiracy, it need only introduce "slight evidence" to connect an individual defendant to the common scheme. *Crockett*, 534 F.2d at 594; *Lopez v. United States*, 414 F.2d 909, 911 (5th Cir.1969). The government must prove only that the defendant knew about the conspiracy and voluntarily agreed to join. *Davis*, 810 F.2d at 476.

The government presented both direct and circumstantial evidence that the defendants participated in a conspiracy to commit mail fraud. Five co-conspirators who had entered guilty pleas testified that they participated in a series of staged accidents planned by Samuel Duncan. They further testified that they participated in the accidents so that they could enter the hospital and collect insurance proceeds. One co-conspirator also testified that Samuel Duncan had identified all six of the other appellants as participants in the same common scheme.

Furthermore, the government presented overwhelming circumstantial evidence that all the defendants participated in a common scheme to defraud insurance companies and that the scheme involved the use of the mails. The documentary evidence revealed a regular, recurring pattern of admissions to twelve different hospitals within sixty miles of the defendants' homes. The evidence also showed that the defendants used the same doctors.

The documentary evidence further revealed that all seven of the appellants lied on insurance applications in response to questions about prior hospitalizations and other insurance coverage. Many of the checks received by the defendants were second-endorsed by Samuel and Grace Duncan. In addition, the evidence revealed that Samuel Duncan had paid many of the premiums for other defendants, negotiated several settlements for other defendants, and received some of the payments resulting from other defendants' hospitalizations.

The evidence clearly established a conspiracy organized by Samuel Duncan. We are convinced that under the applicable standards, there was sufficient evidence to connect each of the defendants to it. The jury was justified in concluding that Grace Duncan, Gay Nell Duncan, Marshall Sut-

ton, Angela Turner, Arthur Wilson, and Oscar Wilson knew of the scheme and wilfully acted to further it.

The evidence also showed that the execution of the scheme involved the use of the mails. Several insurance company representatives testified that their companies mailed payment checks to the defendants. The testimony further revealed that the normal industry practice is to mail such payments. We conclude, therefore, that the government produced sufficient evidence to support the jury's conviction of each defendant for mail fraud and conspiracy.

## Severity of Sentences

■ The defendants claim that the sentences imposed on them were excessive in comparison to the sentences received by co-conspirators who entered into plea bargains with the government. This argument is frivolous. Defendants who enter into plea bargains agree to cooperate with the government in exchange for a known result that they consider favorable. They are in an entirely different position from those who submit their cases to a jury and take their chances on the jury's decisions.

The offenses occurred before the effective date of the Federal Sentencing Guidelines.[7] The matter and extent of sentencing were therefore within the sound discretion of the trial court. *United States v. Stovall*, 825 F.2d 817, 826 (5th Cir.1987). "Absent an allegation and proof that the court was influenced by impermissible motives or incorrect information, a sentence within the range provided for by statute will not be reversed." *Id.* (citing *Dorszynski v. United States*, 418 U.S. 424, 441, 94 S.Ct. 3042, 3051, 41 L.Ed.2d 855, 867 (1974); *United States v. Robinson*, 700 F.2d 205, 215 (5th Cir.1983); *United States v. Garcia*, 693 F.2d 412, 415 (5th Cir.1982)).

The defendants received sentences far below the statutory maximums for which they were eligible. They fail to prove, or even allege, that the court acted on impermissible motives or relied on erroneous in-

formation in imposing sentence. We therefore hold that the district court did not abuse its discretion in formulating and imposing the defendants' sentences.

## Conclusion

The defendants have inadequately developed many of their contentions and have failed to provide supporting authority. We have nevertheless examined their numerous claims, and we conclude that all are without merit. Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

---

7. The guidelines are applicable only to offenses committed after November 1, 1987. Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266; *see United States v. Haines*, 855 F.2d 199, 200 (5th Cir.1988).