# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-706

VINTAGE WINGS & THINGS, LLC

VERSUS

TOCE & DAIY, LLC

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20015669
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Billie Colombaro Woodard, Marc T. Amy, and Billy Howard
Ezell, Judges.

**AFFIRMED.**

Andre F. Toce
Michael G. Daiy
Toce & Daiy, LLC
Post Office Box 2716
Lafayette, LA   70502-2716
(337) 233-6818
COUNSEL FOR DEFENDANT/APPELLEE:
     Toce & Daiy, LLC

D. Reardon Stanford
Hoyt, Hodge & Stanford, LLC
Post Office Box 3263
Lafayette, LA   70502-3263
(337) 234-1012
COUNSEL FOR PLAINTIFF/APPELLANT:
     Vintage Wings & Things, LLC

AMY, Judge.

The plaintiff filed suit against the defendant law firm, seeking payment for charter flights taken on one of the plaintiff's aircraft. The trial court granted an involuntary dismissal at the close of the plaintiff's case finding that the plaintiff failed to meet its burden of proof. The plaintiff appeals. The defendant answers the appeal seeking damages for frivolous appeal. For the following reasons, we affirm the judgment of the trial court and deny the claim for frivolous appeal.

### Factual and Procedural Background

The plaintiff in this matter, Vintage Wings & Things, owns aircraft available for charter. At the time of the events in question in this suit, Vintage Wings was owned wholly by David Jeansonne. At issue are two flights taken on a Lear jet owned by Vintage Wings. The record establishes that, for purposes of chartering the Lear, Vintage Wings entered into a charter management relationship with Million Air Dallas. As part of this relationship, arrangements for charters were made through Million Air, which would then invoice the party responsible for the charter. According to Vintage Wings bookkeeper Valerie Broussard, a percentage of the charter fee would then be forwarded to Vintage Wings.

Vintage Wings filed a Petition on Open Account in November 2001, asserting that the law firm of Toce & Daiy "maintained an open account with petitioner for services rendered and/or goods sold and delivered relative to flights being booked through Vintage Wings & Things, LLC and incurred charges in the amount of $40,435.55." It alleged that this outstanding balance had not been paid.

The record establishes that the outstanding figure related to two flights taken by an attorney of Toce & Daiy, Andre' Toce.[1] One flight, in January 2001, involved

---

[1] Mr. Toce explained that his professional law corporation, Andre Toce, PLC, is a member of Toce & Daiy, LLC.

a trip from Aspen, Colorado, to Lafayette.[2]  The other flight involved a February 2001

trip from Houston, Texas, to Santa Rosa, California, along with a return trip.  There

is no dispute that Mr. Toce took the flights at issue.  Several issues, however, are in

dispute.

The central issue in this case is whether payment was expected for the two

chartered flights.  The defendant contends that these flights were provided by Mr.

Jeansonne to Mr. Toce due to his two million dollar investment in one of Mr.

Jeansonne's other businesses.  Mr. Toce also contends that, at the time of the flights

in question, Mr. Jeansonne was soliciting Mr. Toce's purchase of the Lear.  Due to

Mr. Jeansonne's death subsequent to the flights in question, the record contains no

indication from him as to the nature of the flights.  Finally, Toce & Daiy observes that

it is the named defendant.  However, it contends that the flights at issue were not

firm-related, but that the flights were taken for Mr. Toce's personal use.

The matter proceeded to a bench trial.  After the close of the plaintiff's case,

the defendant moved for an involuntary dismissal.  The motion was granted by the

trial court.

The plaintiff appeals, assigning the following as error:

1.    Business records are an exception to the hearsay rule.  Because
the exception does not require that the business maintaining the
records, and seeking their introduction into evidence, also be the
business which prepared or generated the records, it was error for
the Court to limit the admission of PL-9 (the invoice for the
January flight) and PL-11 (the Owner Statement summaries);

---

[2]The originating trip, from Lafayette to Aspen, was also taken by Mr. Toce, but was paid for through the law firm.  Mr. Toce explained that the payment was in error.  It is the flight from Aspen to Lafayette which remains unpaid.  The plaintiff contends that payment for the originating flight by the firm renders the trial court's determinations regarding Mr. Toce's personal use of the plane inconsistent.  We disagree.  The trial court was free to accept that payment was in error as testified to by Mr. Toce.

2. Appellant established that the Defendant had a history of chartering Appellant's aircraft, that the flights at issue had been taken by Defendant, properly invoiced, the sum of the invoice, and that they had not been paid by Defendant, and therefore the Court erred in granting Defendant's motion for involuntary dismissal as Plaintiff had established grounds for relief.

The defendant answered the appeal, seeking damages for frivolous appeal.

## Discussion

*Business Records Exception*

At issue in this assignment is the introduction of two exhibits, an invoice for one of the flights in question and a "December 2000 Owner's Statement Summary." The record indicates that both pieces of evidence were generated by Million Air. As no Million Air representative testified at trial, the plaintiff attempted to introduce the contents of the exhibits through the business records exception to the hearsay rule. *See* La.Code Evid. art. 803(6). Because the records were not generated by Vintage Wings, the trial court admitted the exhibits for the limited purpose of evidencing the information received by Vintage Wings. The plaintiff asserts that the trial court erred in finding that the "custodian" testifying as to the nature of the business records must be from the business generating the documents. The plaintiff points to federal jurisprudence related to the similarly worded Fed. R. Evid. 803(6), which it asserts indicates that the business having custody of the records does not have to be the company creating them for their introduction. *See U.S. v. Duncan*, 919 F.2d 981 (5th Cir. 1990), *cert. denied*, 500 U.S. 926, 111 S.Ct. 2036 (1991); *U.S. v. Veytia-Bravo*, 603 F.2d 1187 (5th Cir. 1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 686 (1980). Rather, the plaintiff contends, it is the reliability of the documents at issue which must be examined by the trial court.

3

The Louisiana Code of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). The business records exception to the hearsay rule is contained in Louisiana Code of Evidence Article 803, which provides, in part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness;
>
> . . . .
>
> **(6)    Records of regularly conducted business activity.** A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.

In support of its case, the plaintiff presented the testimony of Valerie Broussard, in her role as bookkeeper for Vintage Wings. Ms. Broussard explained she was responsible for maintaining the business' accounts receivable and accounts payable. The plaintiff attempted to introduce the exhibits at issue during her testimony. With regard to the invoices, Ms. Broussard explained that Million Air provided an "owner's statement" each month detailing the Lear's flights, and

4

indicating the money to be received by Vintage Wings given the hours billed for charter bookings and associated maintenance expenses. If Vintage Wings had particular need for an invoice, Million Air would be contacted and an invoice forwarded. One such invoice and an "owner's statement summary" became the focus of the hearsay objection.

The federal jurisprudence referenced by the plaintiff does, indeed, indicate that the Fifth Circuit has held that the party introducing a "business record" does not necessarily have to also present the testimony of the person creating/maintaining the record. *See Veytia-Bravo*, 603 F.2d 1887, (wherein the Fifth Circuit permitted the Bureau of Alcohol, Tobacco, and Firearms to introduce the records of a firearms dealer which were maintained in compliance with federal guidelines and regulations). Neither does the "custodian" as is used under the federal rule have to be the business responsible for generating them. *See Duncan*, 919 F.2d 981, (wherein the Fifth Circuit affirmed a trial court's determination that medical records kept as business records of a hospital could be included in the records of an insurance company. The insurance company's records were appropriately authenticated).

The present matter differs from those advanced by the plaintiff. First, in those cases, the Fifth Circuit was reviewing cases in which the trial courts *accepted* the evidence, ruling the documents trustworthy under the dictates of Fed. R. Evid. 803(6). Importantly, the Fifth Circuit noted in those cases that a trial court ruling on admissibility pursuant to Fed. R. Evid. 803(6) is entitled to broad discretion. *See Duncan*, 919 F.2d 981; *Veytia-Bravo*, 603 F.2d 1187. In the present case the trial court *excluded* the full introduction of the documents.

5

Furthermore, the type of documents at issue in those cases are arguably of a more "trustworthy" nature than those at issue here, *i.e.*, documents in the custody of the federal government and maintained according to federal regulations as in *Veytia-Bravo* or medical records maintained pursuant to the treatment of patients as in *Duncan.* In the instant case, however, the reliability of the contents of the documents was the very controversy at issue at trial, insofar as Toce & Daiy was listed as the responsible party. Given the circumstances of the present case, we do not find that the trial court abused its discretion in refusing to permit the introduction of the documents for all purposes. We note that the trial court permitted the documents insofar as they evidenced what information regarding the charter flights was available to the plaintiff.

Finally, we note that, much of the information available in the documents was available through other sources as it became apparent at trial that there was no question as to whether Mr. Toce had taken the flights at issue. Rather, the case focused on whether Toce & Daiy was appropriately billed.

*Open Account*

Next, the plaintiff questions the trial court's involuntary dismissal of its claim. In particular, it questions the trial court's determination that Toce & Daiy were regular customers of both Million Air and Vintage Wings, but that the two trips at issue in the case were attributable to Mr. Toce personally rather than to Toce & Daiy. Further, the plaintiff questions the trial court's determination that those flights were provided to Mr. Toce as a business incentive from Mr. Jeansonne.

6

This case was styled as one for recovery for claims due on an open account. Louisiana Revised Statutes 9:2781 presently provides as follows with regard to recovery on an open account:

> A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant . . . .
>
> . . . .
>
> D. For purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services. For the purposes of this Section only, attorney fees shall be paid on open accounts owed to the state.

Considerations as to whether an open account exists were recited by a panel of this court in *Broussard v. Guilbeaux*, 93-1353 (La.App. 3 Cir. 5/4/94), 640 So.2d 509, a case referenced by the trial court. The court in *Broussard* noted that, among the factors to be considered are whether the parties have previously engaged in business transactions, whether a line of credit was extended by one of the parties, whether there are ongoing transactions, and whether there is the prospect of future transactions. *Id.* Furthermore, as a basic consideration, for there to be an action on an open account there must be an underlying contract which gives rise to the debt. *Bieber-Guillory v. Aswell*, 98-559 (La.App. 3 Cir. 12/30/98), 723 So.2d 1145.

This matter is on appeal following the granting of a motion for involuntary dismissal. The mechanism for involuntary dismissal is provided by La.Code Civ.P. art. 1672, which provides, in part:

7

B.    In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

In considering a motion for involuntary dismissal, the trial court must consider the plaintiff's presentation of evidence and dismiss the matter if the evidence is found insufficient to establish the plaintiff's case by a preponderance of the evidence. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271. On appeal, a trial court's determination to grant an involuntary dismissal is reviewed for manifest error. *Id.*

The trial court's reasons for ruling reveal a finding that the plaintiff lacked evidence regarding the existence of a meeting of the minds as to the chartered flights. The trial court explained, in part:

> Beyond that the testimony clearly reveals that there may not have been a clear meeting of the minds as to these two invoices, because the two witnesses, Mr. Zaunbrecher and Mr. Vega, clearly testified that they received, as a result of their investments, which were an eighth of the investment made by Mr. Toce personally, free flights on this jet. Mr. Zaunbrecher never took advantage of the jet. He did take advantage of some other flights. Mr. Vega did take advantage on several occasions.
>
> The bookkeeper, Ms. Broussard, testified that it was Mr. Jeansonne's habit to "comp" flights on the jet to people that he thought were beneficial to the business. He did it as a good business relationship. There's some evidence that he was reimbursed for that. That's neither here nor there in this case. I think it's absolutely clear that Mr. Vega heard Mr. Jeansonne offer the jet to Mr. Toce. Mr. Zaunbrecher heard Mr. Jeansonne say he was courting - - both of these witnesses testified that Mr. Jeansonne intended to let Mr. Toce use the jet, and actually offered the jet to him. Ms. Broussard admitted that it was his policy to do that. Now, she was of the impression that there were no free flights, because she was always notified before there was a free flight. She testified that she was instructed that after a certain date, December, before these two flights, that there would be no more "comp" flights for Mr. Toce. But what's missing, a hug[e] gap in this case that makes no sense to this court is that there's no evidence

8

whatsoever that Mr. Toce ever got a free flight. I think that's consistent with all the other facts in this case.

Toce and Daiy were customers of Million Air and Vintage. The evidence shows that they took many flights, they paid for them. In fact, two of the four invoices that remained when Mr. Hoyt took over as succession representative were paid. Those were business of the law firm related flights, as far as I could tell from the evidence. The two that were not paid were personal. One was a family trip to Aspen. The other was described as a personal business trip to California. It seems to me that if a person is offered free use of the jet, No. 1, he's going to take it. He's going to take you up on it. And, No. 2, he's not going to take you up for business reasons, because that gets paid from another source. He's going to take you up on it on personal trips.

I believe that there was a failure of the meeting of the minds between Million Air, Vintage and Mr. Toce regarding the nature of those two trips. I think those were his free trips that he was offered and promised by Mr. Jeansonne. Otherwise, it doesn't make sense, if he was offered in October of 2000, that he would not have taken any of these trips by December or January.

So, I'm going to rule that the plaintiff, although valiant effort was made with the evidence available, has failed to make a prima facie case on open account. . . .

. . . I think that Million Air was under the impression somehow that these were not free flights, but I believe that these were, but more importantly, I believe that the accuracy of the invoices - - if Million Air had been here, perhaps they could have told us, "No, these were definitely not free flights." I don't think Ms. Broussard can say, because it has been shown that she didn't always - - she thought she was always notified. Mr. Jeansonne was not here to tell us for sure whether she was always notified. He's the only one that can say for sure.

So, I'm going to take the view that Mr. Toce was due some free flights. He took them. He was charged for them, mistakenly, No. 1. No. 2, even if that wasn't so, Vintage has not proved an open account of its own against Toce and Daiy.

Our review of the record reveals support for the trial court's granting of the motion for involuntary dismissal.

Given the plaintiff's evidence and the trial court's determinations, this case presents several problems for recovery by the plaintiff. First, suit was filed by

9

Vintage Wings against the firm of Toce & Daiy. However, the billing information relied upon by the plaintiff for the claims stemmed not from the plaintiff, but from another company, Million Air. Furthermore, the trial court questioned the accuracy of the naming of the firm as the party responsible for the charter, and accepted the defendant's version of events. Specifically, Mr. Toce testified that the two flights at issue were personal in nature, not flights for which the firm was responsible. This type of credibility determination is one best left to the trier of fact. *Parish Nat. Bank v. Ott*, 02-1562 (La. 2/25/03), 841 So.2d 749. Furthermore, evidence exists in the record supporting the finding that the flights were intended to be gratuitous ones donated to Mr. Toce, either as recognition for a two million dollar investment in Mr. Jeansonne's company or as enticement to purchase the aircraft. In addition to Mr. Toce's testimony in this regard, the defendant called two witnesses out of order during the plaintiff's case who corroborated this version of events. These witnesses, who were also investors in Mr. Jeansonne's company, explained that they had also been offered complimentary flights on Mr. Jeansonne's aircraft. In fact, one of the witnesses explained that he was present during a conversation in which the aircraft was offered to Mr. Toce.[3] Again, the trial court was free to accept this version of events. Although the plaintiff presented testimony from Ms. Broussard that she had not been notified that these flights were to be provided free of charge to Mr. Toce, her lack of knowledge of an arrangement made by Mr. Jeansonne did not require a finding that no such arrangement existed.

---

[3]This witness, Burtin Zaunbrecher, testified that he attended an October 31, 2000 meeting at which Mr. Toce inquired if he could use Mr. Jeansonne's jet to take his family to Colorado. Mr. Zaunbrecher explained that Mr. Jeansonne responded: "'If you put $2,000,000.00 in my company, you can certainly use my jet.'" In responding to further questioning by Mr. Toce, Mr. Zaunbrecher explained: "He was soliciting selling the jet or the other aircraft to you. But he primarily wanted to sell the jet as soon as he could."

Given the support for the trial court's determination in the record, this assignment lacks merit.

*Frivolous Appeal*

The defendant has answered the appeal, seeking damages for frivolous appeal. Louisiana Code of Civil Procedure Article 2164 indicates that: "The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable." The Louisiana Supreme Court has explained that damages under Article 2164 are warranted only in the event that the appeal was taken only for purposes of delay or that appellate counsel is not sincere in the belief of the view he or she advances on appeal. *Hampton v. Greenfield*, 618 So.2d 859 (La.1993). Although we have found no merit in the plaintiff's position, there is no indication in the record that the above requirements for frivolous appeal are present. Accordingly, we deny the defendant's request for damages in this regard.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the plaintiff, Vintage Wings & Things, LLC.

**AFFIRMED.**