STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-642


JAMES RICKY BIAGAS

VERSUS

ST. LANDRY PARISH SHERIFF OFFICE, ET AL.


**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 10-C-4212-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and J. David Painter, Judges.


**AFFIRMED.**



**Harold D. Register, Jr.**
**216 Rue Louis XIV**
**Lafayette, LA   70508**
**(337) 981-6644**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **James Ricky Biagas**

**Chad Pitre**
**111 N. Court Street**
**Opelousas, LA   70570**
**(337) 942-8587**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Bobby Guidroz, Sheriff of St Landry Parish**
    **Deputy Eric Reed**

**David Clay Clarke**
**Galloway, Johnson, Tompkins, Burr & Smith, PLC**
**328 Settlers Trace Boulevard**
**Lafayette, LA 70508**
**(337) 735-1760**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Bobby Guidroz, Sheriff of St Landry Parish**
    **Deputy Eric Reed**

**AMY, Judge.**

The plaintiff sought damages for mental and physical damages he allegedly suffered as the result of excessive force and offensive statements that he contends occurred during his arrest by St. Landry Parish Sheriff's Office deputies. After the plaintiff presented his case in chief at trial, the defendants moved for an involuntary dismissal. The trial court granted the motion. The plaintiff appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The plaintiff, James Ricky Biagas, filed suit in this matter against the St. Landry Parish Sheriff's Office, St. Landry Parish Sheriff Bobby Guidroz, Deputy Eric Reed, and another unnamed deputy.[1] Therein, Mr. Biagas alleges that he suffered "physical, mental anguish, and social anguish" as a result of "racist, sexist and vulgar remarks" made by the deputies during his arrest,[2] as well as other actions by the deputies which Mr. Biagas felt were outrageous. Mr. Biagas also contends that the deputies used excessive force during his arrest.

At trial, after Mr. Biagas presented his case-in-chief, the defendants moved for involuntary dismissal. The trial court granted the motion and dismissed Mr. Biagas' claims against the defendants.

Mr. Biagas appeals, asserting as error that:

I. Whether the trial court erred in excluding the plaintiff's medical records for treatment received from Dr. Brennan after October 2011?

II. Whether the trial court erred in granting the defendants' motion for involuntary dismissal?

---

[1] The trial court's judgment dated April 29, 2013, only granted judgment as to Sheriff Guidroz and Deputy Reed.

[2] According to the record, after a bench trial, Mr. Biagas was found not guilty of the underlying charges.

**Discussion**

*Evidentiary Issues*

Mr. Biagas' first assignment of error addresses the trial court's decision not to allow evidence of Mr. Biagas' treatment with a clinical psychologist, Dr. Maureen Brennan, after October of 2011. According to the record, Dr. Brennan's deposition was taken in November of 2011, and the defendants were provided with medical records at that time. However, Mr. Biagas apparently continued his treatment with Dr. Brennan, and records concerning his ongoing treatment were not provided to the defendants. Pointing, in part, to discovery requests provided to Mr. Biagas, the defendants objected to the introduction of any evidence concerning Mr. Biagas' treatment after October of 2011. The trial court permitted Mr. Biagas to testify about his treatment, but otherwise excluded Dr. Brennan's testimony and medical records concerning treatment after October of 2011, noting that the local rules and the scheduling conference requires that documents be exchanged at least 45 days before trial.

Evidentiary rulings reviewable on appeal are subject to the provisions of La.Code Civ.P. art. 1636, which permits a party to preserve evidence which was ruled inadmissible in the trial court.[3] *Archangel v. Mayeux*, 12-696 (La.App. 5 Cir. 5/30/13), 119 So.3d 786. If the complaining party fails to proffer the excluded evidence, the appellate court cannot review it and determine its admissibility. *Williams v. Lafayette City-Parish Consol. Gov't*, 11-281 (La.App. 3 Cir. 10/5/11), 72 So.3d 1023, *writ denied*, 11-2473 (La. 2/3/12), 79 So.3d 1027. Therefore, that party is precluded from arguing on appeal that the exclusion was erroneous. *Id.*

---

[3] Pursuant to La.Code Civ.P. art. 1636(A), "[w]hen the court rules against the admissibility of any evidence, it shall permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence."

Our review of the record reveals that Mr. Biagas proffered neither Dr. Brennan's testimony concerning his treatment after October of 2011, nor his medical records. Thus, Mr. Biagas is precluded from asserting that the exclusion was erroneous.

*Involuntary Dismissal*

Mr. Biagas also contends that the trial court erred in granting the defendants' motion for involuntary dismissal.

Louisiana Code of Civil Procedure Article 1672(B) addresses the motion for involuntary dismissal in bench trials, stating:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and the law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render judgment until the close of all the evidence.

Thus, the trial court must consider the evidence presented by the plaintiff and, if the trial court determines that that evidence is insufficient to establish the plaintiff's case by a preponderance of the evidence, dismissal is appropriate. *Vintage Wings & Things, LLC v. Toce & Daiy, LLC*, 04-706 (La.App. 3 Cir. 11/10/04), 886 So.2d 652. The appellate court reviews the trial court's grant of a motion for involuntary dismissal under the manifest error standard of review. *Id.*

In *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La.1991) (citations omitted), the supreme court found that a cause of action for intentional infliction of emotional distress existed in Louisiana, stating that:

> [I]n order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe

3

emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. . . .

. . . .

The distress suffered must be such that no reasonable person could be expected to endure it. Liability arises only where the mental suffering or anguish is extreme.

The defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered. But the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. It follows that unless the actor has knowledge of the other's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.

Liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such distress is certain or substantially certain to result from his conduct. The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like.

In addition to his own testimony, Mr. Biagas presented the testimony of Deputy (now Sergeant) Reed, Lisa Arceneaux, Dr. Brennan, and Sheriff Guidroz. Both Mr. Biagas and Ms. Arceneaux testified about events leading up to Mr. Biagas' arrest and his response thereto. According to Mr. Biagas' and Ms.

4

Arceneaux's testimony, there was an incident between Mr. Biagas and his brother-in-law involving the brother-in-law shooting at Mr. Biagas' mother's dog. The record indicates that the altercation culminated in Mr. Biagas and the brother-in-law confronting each other in front of Mr. Biagas' mother's house. Although it is not clear from the testimony whether any weapons were pointed at anyone else, Mr. Biagas testified that both Mr. Biagas and the brother-in-law had firearms at some point during the confrontation.

Thereafter, the police were called. The record indicates that Sergeant Reed and Deputy Ryan Fenton responded. The conduct of the officers during this interaction is in dispute. Mr. Biagas and Ms. Arceneaux testified that the officers refused to listen to Mr. Biagas' version of events and refused to take Ms. Arceneaux's statement. Additionally, Mr. Biagas and Ms. Arceneaux testified that the officers repeatedly made crude, sexist, and racist remarks to Mr. Biagas, including offensive questions about his relationship with Ms. Arceneaux. Further, they testified that the officers followed Mr. Biagas into the house, and into his bedroom, without permission. Mr. Biagas also testified that, after his arrest, the officers left him in a police car for over an hour and, at the police station, shackled him so tightly to a bench that his left foot went numb.

However, Sergeant Reed testified that he responded to a complaint that Mr. Biagas had pulled a gun on the complainant. Sergeant Reed thought that the complainant was Mr. Biagas' brother-in-law. According to Sergeant Reed, his investigation was limited to whether Mr. Biagas had pulled a gun on his brother-in-law. He denied questioning Mr. Biagas about who he was dating. Sergeant Reed also denied making any racial, sexist, or vulgar comments to Mr. Biagas. He also denied mocking Mr. Biagas in Ms. Arceneaux's presence.

Both Mr. Biagas and Ms. Arceneaux testified that they complained about the officers' behavior to Sheriff Guidroz but that they were never contacted about their complaint and, when they contacted the Sheriff's office to follow up, were told that no disciplinary action would be taken against the officers. Sheriff Guidroz also testified. According to Sheriff Guidroz, racist comments are not permitted or condoned, and he would find any such comments unprofessional. Sheriff Guidroz testified that he did not recall either Mr. Biagas or Ms. Arceneaux coming in to talk to him about his officers' behavior. Further, Sheriff Guidroz testified that he had attempted to find documentation of a complaint by either Mr. Biagas or Ms. Arceneaux and had been unable to find any. He stated that, if he had received a complaint, he would have documented it and handed it over to the chief deputy for investigation. However, Sheriff Guidroz did concede that he occasionally spoke with citizens on his cell phone and that there was no procedure for keeping track of those calls.

Mr. Biagas, Ms. Arceneaux, and Dr. Brennan testified about the effects of these incidents on Mr. Biagas. There was testimony that, since the incidents, Mr. Biagas has had trouble sleeping, had nightmares, has become somewhat withdrawn, and that his temper is shorter. Mr. Biagas testified that he did not have problems sleeping or with nightmares before the incident. He also testified that his attitude towards police officers had changed. According to his testimony, Mr. Biagas used to look up to police officers, but is now cautious around then and thinks that they are "very, very corrupt[.]" Mr. Biagas described police officers as the "first line of soldiers in our country to uphold the Constitution" and stated that he had previously put them in high regard. Mr. Biagas wanted to see the officers punished so that they would know unprofessional behavior is unacceptable.

6

Dr. Brennan, a clinical psychologist, was accepted as an expert. She testified that she had been treating Mr. Biagas and that they had worked on reducing his anxiety, nightmares, and associated headaches. She also reported that Mr. Biagas was anxious about how his arrest might affect custody of his young son. Dr. Brennan testified that she saw Mr. Biagas three times between December of 2009 and January of 2010, and again in March of 2011. According to Dr. Brennan, Mr. Biagas had an adjustment reaction after the incident. She testified some of the basic tenets that ordered Mr. Biagas' universe—namely, that there are good guys and bad guys and that you can count on the good guys—had been undermined. Dr. Brennan opined that Mr. Biagas had an overly naïve view of right and wrong and "an unrealistically high belief and expectation to start with" and that he put law enforcement on a pedestal. Further, Dr. Brennan reported that Mr. Biagas had experienced a lessening of his symptoms, although seeing incidents on television and in the news could trigger problems.

The record indicates that Mr. Biagas stipulated that he had no physical injuries. Further, finding that being shackled for an hour did not constitute excessive force, the trial court found that Mr. Biagas did not prove his excessive force claim.[4] We find no error in the trial court's conclusion in this regard.

---

[4] In *Kyle v. City of New Orleans*, 353 So.2d 969, 972-73 (La.1977) (citations omitted), the supreme court addressed the determination of excessive force cases, stating:

> The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result.

> Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case. A court must evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers. As such, the trial court's finding is entitled to great weight.

With regard to Mr. Biagas' intentional infliction of emotional distress claim, the trial court found that the only acts taken by the defendants that might be actionable were the unprofessional and vulgar remarks allegedly made by the officers. The trial court found that all of the other actions taken by the defendants were within their authority. The trial court found that, even assuming the officers made the crude and offensive remarks, that there was no evidence presented that the officers knew that Mr. Biagas was particularly susceptible to emotional distress. Further, the trial court concluded that Mr. Biagas' reaction was not that of a person of ordinary sensibilities. Specifically, the trial court stated that:

> That leaves the third issue and that is whether or not the actor knew or should have known of the certainty or substantial result to follow or he desired to inflict the severe emotional distress. The court went on in [*White*, 585 So.2d 1205] to state unless the actor has knowledge of the other's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the affect such conduct would ordinarily have on a person of ordinary sensibilities and I think Dr. Brennan, the expert called by the plaintiff, answered that question for us. Basically what Dr. Brennan testified is that Mr. Biagas had an unreasonable expectation. He held all police officers on a pedestal and he did not see black and white. It was either concrete or it was not concrete and that basically his reactions to what happened in this matter [sic]. Taking her testimony [as] a whole, the Court finds that Mr. Biagas' reactions to what was said to him was not -- and what followed and the damages was not a reasonable response by Mr. Biagas and it was not conduct that would ordinarily have on a person of ordinary responsibilities [sic]. Furthermore, there was no evidence that has been shown, in this case that Officer Reed knew or had any reason to intentionally inflict emotional distress or knew that it could cause Mr. Biagas the emotional distress which he has, in his perception, has suffered as a result of this matter.

In order to succeed on his intentional infliction of emotional distress claim, the plaintiff had to establish three elements: that the defendants' conduct was extreme and outrageous; that his emotional distress was severe; and that "the defendant[s] desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from [their]

conduct." *White*, 585 So.2d at 1209. The trial court concluded that Mr. Biagas failed to prove the third element of his intentional infliction of emotional distress claim, and our review of the record does not reveal manifest error in that conclusion. *See Webb v. Theriot*, 97-624 (La.App. 3 Cir. 10/29/97), 704 So.2d 1211.

In *White*, 585 So.2d at 1210, the supreme court stated that "unless the actor has knowledge of the other's particular susceptibility to emotional distress, the actor's conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities." The evidence supports a finding that Mr. Biagas's perception was that the defendants engaged in the alleged conduct, and that he had an adjustment reaction as a result. However, the record supports the trial court's conclusion that Mr. Biagas' reaction was not that of a person of ordinary sensibilities. Specifically, Dr. Brennan indicated that Mr. Biagas had an overly naïve view of right and wrong and that his problems occurred when that view was challenged. Further, Mr. Biagas presented no evidence that the defendants knew that he was particularly susceptible to emotional distress or that they "desire[ed] to inflict severe emotional distress" or that they knew "that such distress is certain or substantially certain to result from [their] conduct." *Id.* at 1210. Accordingly, the record supports the trial court's conclusion that that the evidence was insufficient to prove Mr. Biagas' case by a preponderance of the evidence. *See Vintage Wings & Things*, 886 So.2d 652. Thus, we find no manifest error in the trial court's grant of the motion for involuntary dismissal.

The plaintiff's assignment of error with regard to the motion for involuntary dismissal is without merit.

**DECREE**

For the foregoing reasons, we affirm in all respects the trial court's judgment granting the motion for involuntary dismissal made by the defendants, St. Landry Parish Sheriff Bobby Guidroz and Deputy Eric Reed. Costs of this appeal are assessed to the plaintiff, James Ricky Biagas.

**AFFIRMED.**