# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-383

GERALD A. NEWBURGER, JR.

VERSUS

ORKIN, L.L.C., ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 261,969
HONORABLE GEORGE CLARENCE METOYER, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**AFFIRMED.**

William Alan Pesnell
Alan Pesnell Lawyer LLC
1330 Jackson Street – Suite D
Alexandria, LA 71301
Telephone:  (318) 704-6000
COUNSEL FOR:
    Plaintiff/Appellant – Gerald A. Newburger, Jr.

Barbara Bell Melton
Faircloth Melton, LLC
105 Yorktown Drive
Alexandria, LA 71303
Telephone:  (318) 619-7755
COUNSEL FOR:
    Defendant/Appellee – Orkin, L.L.C.

**Matthew Nowlin**
**Keiser Law Firm, P.L.C.**
**P. O. Box 12358**
**Alexandria, LA 71315**
**Telephone: (318) 443-6168**
**COUNSEL FOR:**
     **Defendant/Appellee – Cypress Point at Lake District Condominium Association, Inc.**

**Christopher J. Roy, Sr.**
**1920 Jackson St.**
**Alexandria, LA 71301**
**Telephone: (318) 767-1114**
**COUNSEL FOR:**
     **Plaintiff/Appellant – Gerald A. Newburger, Jr.**

**THIBODEAUX, Chief Judge.**

Plaintiff, Gerald A. Newburger, Jr., filed a petition for injunctive relief seeking to enjoin Cypress Point at Lake District Condominium Association, Inc. (Cypress Point) and Orkin, L.L.C. (Orkin) from performing pest control operations at or near Plaintiff's condominium. The matter proceeded to trial on the permanent injunction against Cypress Point. After Plaintiff completed the presentation of his evidence, Cypress Point moved for involuntary dismissal pursuant to La.Code Civ.P. art. 1672(B). The trial court granted the motion, finding that Plaintiff failed to establish, by a preponderance of the medical evidence, that he will suffer irreparable harm as a result of Cypress Point conducting pest control operations at or near his condominium. As our review of the record reveals no manifest error or abuse of discretion, we affirm the trial court's judgment.

I.

**ISSUES**

Plaintiff raises the following issues for this court's review:

(1) whether Plaintiff presented evidence of irreparable harm to his person being caused by Defendant's pest control operations on motion for involuntary dismissal;

(2) whether Plaintiff presented prima facie evidence that Defendant's pest control operations caused his physical problems on motion for involuntary dismissal;

(3) whether the trial court properly dismissed Plaintiff's case on a motion for involuntary dismissal; and,

(4) whether the trial court erred in failing to introduce the statement of Dr. Robert C. Morrison into the record, given the defense attempt to show a recent fabrication.

## II.

## FACTS AND PROCEDURAL HISTORY

On May 14, 2018, Plaintiff brought the present action to enjoin Cypress Point from spraying noxious chemicals around his condominium, located at 404 G Ainsley Blvd., Alexandria, Louisiana. The petition alleged that in connection with certain pest control operations, Cypress Point had contracted with Orkin to have noxious chemicals sprayed at or near his condominium, which caused him to suffer certain adverse reactions, "including severe headache, allergic reactions, nausea, [and] lightheadedness[.]" Because he "believe[d] that continued operations may permanently and significantly adversely affect his health and safety, causing petitioner immediate and irreparable injury[,]" Plaintiff prayed that a temporary restraining order, a preliminary injunction, and a permanent injunction be issued, enjoining Cypress Point's pest control operations at or near his condominium.

In support of his petition, Plaintiff submitted a letter from his uncle, Dr. Robert C. Morrison, in which Dr. Morrison stated that Plaintiff was known by him

> to suffer symptoms of chemical sensitivity to certain pesticides causing him migraine headaches and distress. An assessment may be needed to determine if medication might alleviate these symptoms. It is advisable that until the pesticides are known, that no further exposure occur.

The trial court issued a temporary restraining order, which expired by operation of law. Sometime thereafter, Plaintiff voluntarily dismissed his application for preliminary injunction and his claims against Orkin. The matter then proceeded to bench trial on the permanent injunction against Cypress Point.

Plaintiff testified that he had suffered from migraine headaches all of his adult life, often triggered by paint fumes, volatile organic chemicals, pesticides, insecticides, and gasoline. The effects, he explained, are physically debilitating,

2

causing dizziness, vertigo, and a complete inability to function at anything other than lying in a dark room minimizing exposure to triggers and loud noises. According to him, these effects last for periods of up to two days and prevent Plaintiff from working, driving, attending social functions, or even going outside to common areas. Plaintiff further explained that over the years he sought treatment in an unofficial manner from his uncle, Dr. Morrison, who died after the filing of this litigation.

As to the facts giving rise to this matter, Plaintiff recalled that, on January 30, 2018, Cypress Point had Orkin spray around the foundation of his building, at which time he approached and took pictures of the Orkin employee spraying the pesticide. When he finished taking pictures, Plaintiff went upstairs to his second floor unit. He testified, "The chemical was all around the stairs, and as I went upstairs I began to feel sick. That progressed for about an hour, and after about two hours I was violently sick." He recalled that he was violently ill for two days and stated that he simply could not live in his present home if he has to suffer that on a regular basis.

According to his testimony, there were no more sprayings around his unit since the filing of this suit, and he has had no further health events. Plaintiff also testified that the chemical had a smell and that although he inquired, both Cypress Point and Orkin refused to tell him what chemicals they were using.

When questioned regarding the Articles of Incorporation, the Condominium Declaration, and the Rules and Regulations for the condominium association, Plaintiff agreed that he bought his condominium subject thereto and that, under their provisions, Cypress Point had the power to employ personnel to perform services required for the proper operation of the condominiums. It was his understanding that the documents established that the Cypress Point board was

responsible for maintaining the buildings and that it could hire people to maintain the complex.

At the conclusion of his testimony, Plaintiff's counsel sought to introduce Dr. Morrison's letter that was attached to the petition to rebut the implication of "a recent fabrication by [Plaintiff] with regard to Dr. Morrison's contacts[.]" Finding the document was hearsay, the trial court refused to admit the letter.

Plaintiff then called his treating neurologist, Dr. Charles Ugokwe, with whom Plaintiff consulted after Dr. Morrison died. Dr. Ugokwe testified that there is no known cause for migraines, but that it is medically accepted that when a person with migraines is exposed to a precursor, his migraine will get worse. According to his testimony, strong smells, fumes, MSG, banging one's head on a wall, and alcohol are all medically-known precursors that precipitate migraines, and neurologists speculate that migraines may be hereditary. Dr. Ugokwe also opined that it was more likely than not that the exposure to the pesticide described by Plaintiff precipitated or exacerbated the migraine about which Plaintiff complained.

On cross-examination, Dr. Ugokwe admitted that he did not know what chemical was used by Orkin. If the chemical had no odor, however, then it would not be a trigger. Moreover, he stated that he just could not "tie . . . back" the exposure to Plaintiff's claims.

Discussing Plaintiff's medical records, Dr. Ugokwe testified that there was no familial history documented in either his records or Dr. Morrison's records. In fact, Dr. Morrison's records contained no mention of migraines at all, while Dr. Ugokwe, in his records, noted that Plaintiff conveyed to him "a 20 year history of migraine and that he was having one to three a month with the last headache one

4

month ago, which would have been in December of 2018." As Orkin had not sprayed since April 2018, Dr. Ugokwe conceded that "there are other things besides this alleged pesticide use that triggered his migraines[.]"

Upon further examination by defense counsel, Dr. Ugokwe agreed that "giving [Plaintiff] notice of the time of application so that he could avoid . . . being exposed to it [would] be a reasonable accommodation[.]" He further admitted that there was "no way to know to say anything Orkin was applying was a trigger unless we determine whether or not it has an odor or fumes."

The trial court granted Cypress Point's motion for involuntary dismissal after Plaintiff rested. It dismissed with prejudice all of Plaintiff's claims and demands against all the defendants. In his written judgment, the trial court stated:

> The Court, being of the opinion that, even giving all allowable inference to Plaintiff, no evidence was presented, statutory or jurisprudential, to establish by a preponderance of the evidence that he will suffer irreparable harm as a result of Defendants conducting pest control operations at or near Plaintiff's condominium unit . . . .
>
> More specifically, this Court finds that Plaintiff failed to establish medical evidence under a "more probable than not" preponderance standard to support his claims that his alleged severe headaches, allergic reactions, nausea, and lightheadedness were caused by Defendants' pest control operations.

III.

**STANDARD OF REVIEW**

Appellate courts review a trial court's grant of an involuntary dismissal under the manifest error standard. *Mayes v. State of La.*, 96-789 (La.App. 3 Cir.

5

12/11/96), 685 So.2d 497, *writ denied*, 97-113 (La. 3/7/97), 689 So.2d 1376. In accordance with this standard,

> [a] reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housley v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. *See Rosell* [*v. ESCO*], 549 So.2d 840 [(La.1989)].

*Jennings Guest House v. Gibson*, 07-912, pp. 2-3 (La.App. 3 Cir. 12/5/07), 971 So.2d 506, 509. A trial court's decisions to admit or exclude evidence are reviewed for abuse of discretion. *Hebert v. Angelle*, 600 So.2d 832 (La.App. 3 Cir.), *writ denied*, 604 So.2d 997 (La.1992).

IV.

## LAW AND DISCUSSION

Louisiana Code of Civil Procedure Article 1672(B) sets forth the mechanism for the involuntary dismissal of claims:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

When ruling on a motion for involuntary dismissal, "the trial court is not required to review the evidence in the light most favorable to the plaintiff." *Mayes*, 685 So.2d at 500. Rather, the trial court needs only "to weigh and evaluate

6

all of the evidence presented up to that point[.]" *Id*. Dismissal is warranted "if the evidence is found insufficient to establish the plaintiff's case by a preponderance of the evidence." *Vintage Wings & Things, LLC v. Toce & Daiy*, LLC, 04-706, p. 8 (La.App. 3 Cir. 11/10/04), 886 So.2d 652, 657. In this determination, the trial court is accorded much discretion. *Continental Ins. Co. v. Three Seasons Pest Control Co.*, 94-1094 (La.App. 3 Cir. 2/1/95), 649 So.2d 1220.

Under the authority of La.Code Civ.P. art. 3601(A), "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant[.]" In *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 04-211, 04-212, p. 5 (La. 3/18/04), 867 So.2d 651, 655, the supreme court explained that injunctive relief is designed "to prevent the occurrence of future acts that may result in irreparable injury, loss or damage to the applicant." "Irreparable harm or injury generally refers to a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard." *Jennings Guest House*, 971 So.2d at 509. A "trial court may issue a permanent injunction only after a full trial on the merits, at which the party seeking the permanent injunction must demonstrate entitlement to the injunction by a preponderance of the evidence." *Desselle v. Acadian Ambulance Serv., Inc.*, 11-1017, p. 4 (La.App. 3 Cir. 2/1/12), 83 So.3d 1253, 1257, *writ denied*, 12-518 (La. 4/13/12), 85 So.3d 1253.

Finding that Plaintiff had failed to prove, by a preponderance of the medical evidence, that his medical claims were causally connected to Cypress Point's pest control operations, the trial court involuntarily dismissed Plaintiff's claims. After reviewing the record, we find no manifest or clear error in the trial court's factual determination.

7

Although Plaintiff testified that his medical issues were directly connected to Cypress Point's application of pesticides, Plaintiff did not present any medical evidence establishing this causal connection. Rather, his treating physician merely testified to the medical community's speculations and observations as to the general correlation between strong fumes and odors and the precipitation or exacerbation of migraine symptoms. In fact, Dr. Ugokwe specifically stated that (1) there are no known causes of migraines, (2) he did not know if the chemicals used by Orkin had an odor, and (3) he could not "tie [the exposure] back" to Plaintiff's claims and the only thing that tied Plaintiff's claims to the alleged use of the pesticides was the history Plaintiff provided.

Plaintiff bore the burden of proving by a preponderance of the evidence that Cypress Point's future pest control operations, which are authorized by the association's governing documents, would cause him "irreparable injury, loss or damage." The record is devoid of evidence directly connecting any chemical utilized by Cypress Point to the harm Plaintiff complained of. The actual chemical was not identified. And although Dr. Ugokwe did testify to a general link between strong odors and the exacerbation of migraine symptoms, only Plaintiff testified that the chemical had a strong smell, which he thought caused his migraines, and the trial court was well within its great discretion in not crediting his testimony.

Accordingly after reviewing the record in its entirety, we find that there was evidence, or rather the lack thereof, before the trial court which, based upon his reasonable evaluation of credibility, furnished a reasonable factual basis for his finding that Plaintiff failed to present evidence, specifically medical evidence, sufficient to prove, by a preponderance standard, his claims that his alleged adverse medical complaints were caused by Cypress Point's pest control operations.

Therefore, under the applicable standard of review, we cannot find that his factual findings were manifestly erroneous.

Similarly, we cannot say that the trial court abused its discretion in excluding Dr. Morrison's letter as hearsay. Despite Plaintiff's assertions that the document should have been admissible under La.Code Evid. arts. 801(D)(1)(b), 803(4), and 804(B)(6), the uncertified letter does not meet any of the statutory exceptions. First, under La.Code Evid. art. 801(D)(1)(b), a prior statement of a witness subject to cross-examination is statutorily non-hearsay, but because Dr. Morrison was neither a witness nor subject to cross-examination, his letter is not an admissible prior statement. Second, La.Code Evid. art. 803(4)'s exception for statements made for and reasonably pertinent to medical treatment also does not apply to the letter, which was written by Dr. Morrison, not the patient, and is not part of Plaintiff's medical records.

Finally, the extraordinary, catchall exception set forth in La.Code Evid. art. 804(B)(6) allows, in the trial court's vast discretion, the admission of trustworthy out-of-court statements when the proponent has made reasonable efforts to adduce all other admissible evidence of the fact and the adverse party as well as the court is provided with sufficient advance notice in writing of its intended use. This exception is likewise not applicable herein as (1) the letter does not comport with Dr. Morrison's certified medical records, which contain no mention of migraines; (2) the record does not demonstrate that either Cypress Point or the trial court knew of Plaintiff's intent to use the letter prior to trial or that the notice was impracticable or excusable; and (3) the record does not demonstrate that Plaintiff adduced all other admissible evidence to establish the fact to which the statement relates. We note

9

that the letter does not establish any relevant facts beyond that Plaintiff has a history of migraines, which no one disputes, and that further assessment may be needed.

Accordingly, we can find no abuse of the trial court's discretion in excluding the letter. Having found no manifest error or abuse of discretion, we affirm the trial court's judgment, dismissing with prejudice Plaintiff's claims against Cypress Point.

V.

**<u>CONCLUSION</u>**

For the foregoing reasons, the judgment of the trial court is affirmed.

Costs of this appeal are assessed to the Plaintiff/Appellant, Gerald A. Newburger, Jr.

**AFFIRMED.**